D. J. SCHEUMACK et al., Appellants,

v.

M. J. SIMMONS et al., Appellees.

No. 15403.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Feb. 27, 1969.

Rehearing Denied May 15, 1969.

John Shirley, Texas City, for appellants.

Peter J. La Valle, Texas City, for appellees.

BELL, Chief Justice.

D. J. Scheumack and W. J. Hall filed suit against M. J. Simmons and Mrs. G. P. (Lois) Simmons to enforce a contract of sale entered into between Mr. and Mrs. G. P. Simmons as sellers and W. J. Hall as purchaser. The contract was dated June 10, 1959, and provided for the conveyance to Hall of Lots 11 and 12 in Block 197 of Texas City Second Division in Galveston County, when Hall had paid $5,500.00 plus 6% interest. Payment was to be made at the rate of $60.00 per month and was to be applied to interest, taxes, insurance and principal. Appellants contended below that they were entitled to a conveyance because they had tendered the full balance owed sometime in February, 1968.

Appellees filed an answer alleging default by Hall in paying the installments which worked a forfeiture. Too, they alleged voluntary abandonment by Hall and that he violated the terms of the contract by attempting to assign it to Scheumack without endorsing the assignment on the original contract and without obtaining the written consent of the surviving seller, Mrs. Simmons. By way of cross-action appellees sought a declaration that the contract was void because of Hall's default; sought recovery against Hall for rental of $420.00, and asked. that the assignment from Hall to Scheumack be removed as a cloud from their title.

Mrs. Simmons succeeded to her husband's rights under his will. She was an elderly lady and her son, M. J. Simmons, took care of her affairs. She passed away subsequent to trial.

The court, in a trial without a jury, rendered judgment removing cloud from title and decreeing that appellees were entitled to possession. It decreed that appellants take nothing except Scheumack should be refunded the $120.00 he had paid February 1, 1968, to the bank that was collecting on the contract, and $2,693.46 that Scheumack had tendered, on his own behalf, into the registry of the court in connection with this suit.

The contract of sale, as above stated, provided for monthly payments of $60.00 per month beginning July 1, 1959. Payments were made by Hall monthly, with the exception below noted, but payments were many times late. At trial it was stipulated that payments had not been made for April, 1966, and January, May, June, July, August and November. Hall's last payment was in December, 1967. The evidence shows Mr. Simmons had paid taxes in excess of amounts allocated for taxes by

the bank out of the monthly payments. The record reflects that particularly during the latter part of 1967 and in January, 1968, Mr. Simmons, acting for his mother, was insistent that Mr. Hall pay the monthly payments he was delinquent. Mr. Hall had become delinquent because of illness. Mr. Simmons was insistent on payment because he needed the money to assist in payment of his mother's nursing home expense. In January, 1968, Mr. Scheumack talked with Mr. Simmons about making payments. Mr. Simmons told Scheumack he wouldn't make any payments without something in writing. Mr. Simmons wanted all back payments made. Mr. Scheumack said he could pay $120.00 in February and $120.00 each month thereafter until the delinquency was eliminated. No agreement was reached. On February 1, 1968, Mrs. Scheumack went to the bank and paid the note teller $120.00. Mrs. Howell, the teller, was to hold this payment on Mrs. Scheumack's instructions. Mrs. Howell testified neither Mr. nor Mrs. Simmons authorized her to accept payments on the Hall contract from Mrs. Scheumack. Mrs. Scheumack told Mrs. Howell they wanted to help Mr. Hall. Mrs. Howell told her she wasn't authorized to accept the payments. Mrs. Scheumack insisted, so Mrs. Howell took the money and issued Mrs. Scheumack a receipt. After the payment by Mrs. Scheumack on February 1, a bank representative other than Mrs. Howell, on February 5, made out a deposit slip to Mrs. Simmons' account and sent a duplicate by mail to Mr. Simmons. Just when he received it is not shown, but he testified he knew nothing of this payment until after he received the deposit slip.

Mr. Hall testified no one ever demanded he vacate the property previous to February, 1968. He also testified no one ever demanded additional money for taxes or insurance. He was never given an accounting for taxes and insurance payments, nor did he ask for any. There were two houses on the propery. Mr. Hall and his young daughter occupied one and another daughter and her husband and their two small children occupied the other. Around the first of February he and the others occupying the property moved. He said he had no alternative because he had no money to pay. After he moved he went back to the place to pick up a garbage can and Mrs. M. J. Simmons was there cleaning up around the place. He denied he told her he couldn't pay and was giving up the place. On February 21, 1968, Mr. Hall executed to Mr. Scheumack an assignment of the contract. No consideration was given for it. Before Mr. Hall moved out of the home he, according to his testimony, had an agreement with Mr. Scheumack that Scheumack would make the payments. After Mr. Hall vacated the property Mr. La Valle, attorney for the Simmons, sent a letter to Mr. Hall telling him to vacate the premises. This was after Mr. Scheumack had agreed with Mr. Hall to make the payments, according to Mr. Hall. It was after February but neither the date nor contents of the letter are in evidence.

Mr. Scheumack testified he talked with Mr. Simmons in January, 1967 about helping but told him he could not pay all of the seven delinquent payments. On January 29, he told Mr. Simmons he could make two payments and Mr. Hall could keep up the payments due thereafter, but Mr. Simmons said he had rather not as he was responsible to the estate and his folks were looking to him for the money. He stated on January 30 he told Mr. Simmons he could make two payments February 1 and then for three consecutive months make payments for two months, so at the end of 90 days the back payments would be liquidated. Appellees, on a date not shown, filed a forcible detainer suit against appellants. Judgment was favorable to appellants, according to oral testimony, though it appears no testimony was introduced on trial. Appeal was taken to the County Court but no disposition of the appeal is shown. None of the record of the proceedings in the forcible detainer suit appears in the record before us. About the middle of January, 1968, Mr. Scheumack looked the property over, but had not been

back to the property since. Prior to this he had had some cleaning done on the woodwork. He had arranged for a plumber to repair the plumbing and the plumber had started taking up the bathroom floor. The date of this is not shown. The plumber could work no longer because he found the house padlocked. When Scheumack had this work done he had no deed to the property.

The appellees never gave any written agreement to any assignment of the contract to Mr. Scheumack. About February 7 Mr. Scheumack made a deposit for utility service for the property.

Mr. Simmons had been lenient with Mr. Hall because of Mr. Hall's illness and Mr. Hall was seeking social security. He just hated to put him out because he was sick. Mr. Simmons in January, 1968 advised Mr. Scheumack not to make the payments for Mr. Hall but stated if he wanted to Mr. Simmons could not keep him from doing so. He told Scheumack that Mr. Hall was behind in his payments. Mr. Scheumack said he was going ahead and make the payments for Mr. Hall. Mr. Hall told Mr. Simmons nothing about moving when he talked with him a few days after the conversation with Scheumack. Two or three days later Mr. Hall moved without notifying appellees. Mr. Simmons learned of his moving from a neighbor. He assumed Mr. Hall had abandoned the property and they went to it and started cleaning it up so they could get it in shape to rent. Mr. Hall never gave him any explanation as to why he moved. Later Mr. Hall told him he had assigned the contract. Appellees never agreed to the assignment. When Mr. Hall told Mr. Simmons this, Mr. Hall was living elsewhere.

On February 27, 1968, Mr. Simmons' mother executed a power of attorney to him which among other things authorized him to bring suit for the property by filing a forcible detainer suit. Such suit was filed about a week later.

The instant suit was filed by appellants March 6, 1968 and the balance owed on the contract was tendered into court by Mr. Scheumack on his own behalf. Mr. Simmons testified there had never been a previous tender, and he had demanded the property back and wanted the property back because the purchaser had not lived up to the contract.

Mrs. M. J. Simmons testified that after Mr. Hall moved she was at the property cleaning it up. Mr. Hall came for a garbage can. Mr. Hall then told her he could not make the payments and the property was so run-down he was ashamed for his friends to see it. Mr. Hall told her they were turning the property back. This latter statement was denied by Mr. Hall.

There is no evidence that the property had increased in value. There is no evidence that the purchaser had made improvements. The inference may be drawn from the meager testimony that the improvements were in run down condition. The evidence above related shows Mr. Hall and his young daughter had used one of the houses from about the date of the purchase in July, 1959 until they moved the first part of February, 1968, and the other house was used by Mr. Hall's son-in-law and other daughter and their children.

The trial court made elaborate findings of fact and conclusions of law. We need notice only those we deem controlling in our disposition of this appeal.

The court found that prior to the alleged assignment from Hall to Scheumack Mr. Simmons demanded the payments required by the contract and then Mr. Hall and his son-in-law voluntarily vacated the property and did not notify him they were leaving. It also found that appellees never gave oral or written consent to the substitution of Mr. Scheumack as purchaser and that the attempted assignment took place after default by Hall and after Hall had voluntarily relinquished possession of the property. There was never any tender by Hall or by anyone on his behalf of the delinquent payments or the full balance owed under the contract. The letter to Mr. Hall

from appellees' attorney was notice to vacate. Mr. Hall had already vacated and appellees had resumed possession. The notice was apparently sent preparatory to filing the forcible detainer suit because Scheumack was apparently claiming some right under Hall. The attempted transfer took place after default by Mr. Hall and after he had voluntarily surrendered possession.

The court found that Mrs. G. P. Simmons through M. J. Simmons gave notice of intention to forfeit the contract by filing the forcible detainer suit prior to March 6, 1968.

The court concluded the attempted transfer to Scheumack was void. It violated the covenant against assignment without the written consent of the seller.

We have reached the conclusion that the judgment of the trial court should be affirmed because the trial court, on sufficient evidence, found there had been default by Mr. Hall and he voluntarily relinquished possession of the property. While there is no express finding that appellees then went into possession such a finding will be presumed because there is evidence to support a finding. This is a finding that the purchaser had abandoned the executory contract of sale. There is no point of error attacking the finding. This finding supports the trial court's conclusion that appellees were entitled to possession of the property.

Appellants have strongly urged that appellees' action in receiving late payments was a waiver of their right to declare a forfeiture and appellants should have been allowed to keep the property since Mr. Scheumack had, after this suit for possession was filed, tendered the balance of the contract price.

Waiver is an affirmative defense that must be pleaded. Rule 94, Texas Rules of Civil Procedure. Appellants did not plead it and it was not tried by consent.

We have read all cases cited by appellants which in effect hold that where late payments have been accepted by the seller for a considerable period of time without a declaration of forfeiture, the purchaser after a declaration of forfeiture should, if equitable facts be present in the given case, be allowed to demand a reasonable time to prevent forfeiture by paying the balance of the contract price. All cases cited are distinguishable from this case. In them, under proper pleading, waiver was relied on. Further, there had been no abandonment by the purchaser. In them there had been either the erection of valuable improvements or the property had otherwise increased in value.

The court found, and there is no point of error attacking such finding, that the attempted assignment to Mr. Scheumack, which was in violation of the sales contract, was made after abandonment by Mr. Hall and as we have noted after re-entry by appellees. Mr. Hall had no interest he could assign.

Affirmed.